# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0287-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TRAVIS BURRIS, a/k/a
HAJIEM SUMLER,
TRAVIS E. BURRIS,

     Defendant-Appellant.

_____

Submitted February 4, 2020 – Decided March 24, 2020

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 06-10-3262.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Emily M. M. Pirro, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Travis Burris appeals from the May 3, 2018 denial of his petition for post-conviction relief (PCR), after an evidentiary hearing, contending trial counsel was ineffective for failing to investigate a potential exculpatory witness, and in depriving defendant of his right to testify on his own behalf. We affirm.

We derive the facts from our prior decision in the direct appeal and the testimony from the evidentiary hearing. State v. Burris, No. A-0666-11 (App. Div. Sept. 11, 2014).

> On the afternoon of March 22, 2006, D.E. was shot in the face as he was backing his car out of his driveway in Newark. D.E. was not the intended target of the shooting, but he did observe the shooter, and later identified defendant in a photo array. After the shooting, police recovered several shell casings and bullet fragments from the scene.
>
> [D.E. also] provided a statement to the police regarding the shooting, as well as the shooter's description. He described his assailant as having a "goatee," "dreads," and "a bandana tied to his waist."
>
> On the morning of March 24, 2006, D.E. met with the police again and identified defendant from an array of six photographs. Both at the time he was first shown the pictures and at trial, D.E. explained he was a "[h]undred percent" sure he had identified the man who shot him in the face. D.E. also testified that at first, he believed he was the target, but he later learned that

defendant was trying to shoot at two other individuals who were seen on the sidewalk.

[Id. at 2-3 (alteration in original).]

D.E. learned he was not the intended target because of the events that occurred on March 23, 2006 in Newark. On that evening,

> L.C. was walking with her two sons, K.C. and D.C. . . . when she was shot and killed; K.C. was also shot, suffering injuries to his arm and chest. The police recovered forty-five caliber shell casings and one bullet fragment from the scene. Both K.C. and D.C. identified defendant as the shooter from photographs presented to them.
>
> D.C. testified at trial regarding the events surrounding this incident. He acknowledged he was a Crip gang member who knew defendant, "from the area," as a Brick City Brim Blood gang member named "July." D.C. explained that three days prior to the shooting, on March 20, 2006, defendant approached him for the first time and asked, "[Y]ou know what zone you in? You know where you at, what territory?" As defendant came toward D.C., he made threatening gang sign gestures with his hands. D.C. stated defendant "threw out B's, that mean[t] he was banging in his set and when he thr[e]w up C K, that mean[t] . . . kill a Crip."
>
> D.C. explained that two days later, on March 22, 2006, defendant approached him in the store located on South 20th Street. Defendant informed D.C. that "one of [his] Crip homies came around there and robbed them[.]" D.C. responded that he did not have anything to do with a robbery and that just because he was a Crip "don't mean that [he] own[ed] every Crip that's in

3

Newark or Irvington, East Orange, whatever." At that time, D.C. believed defendant "was gonna do something," but he did not anticipate that defendant would later shoot at him. D.C. testified that the events that occurred the following day, on March 23, 2006, had to do with these prior altercations with defendant.

K.C. testified at trial that after hearing the first shot, he heard his mother scream for help. As he went towards her, he was shot in the left arm and rib; K.C. discovered that his mother had been shot in the neck. Both D.C. and K.C. testified that after the shooting stopped, they witnessed defendant flee the scene. L.C. and K.C. were subsequently taken to the hospital, where L.C. died as a result of her gunshot wound.

After the second shooting, police obtained an arrest warrant for defendant, and then recovered a gun at the residence where defendant was staying when he was arrested. Police sent the gun to the ballistics lab; the gun matched the shell casings previously seized from the scenes of the two shootings. The evidence indicated defendant had the gun for about two and one-half weeks prior to the date of the shootings. Defendant also admitted the gun was his.

[Id. at 3-5 (alterations in original).]

Defendant was charged in an indictment with second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); three counts of third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); two counts of second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a); first-degree murder, N.J.S.A. 2C:11-3(a)(1) (2); two counts of first-degree attempted

murder, N.J.S.A. 2C:5-1, 2C:11-3; and second-degree unlawful use of a body vest, N.J.S.A. 2C:39-13.

Following an eleven-day trial, the jury returned a verdict finding defendant guilty on all counts. Defendant was subsequently sentenced to an aggregate sentence of life imprisonment with 117-and-one-half years of parole ineligibility.

On direct appeal, defendant argued that 1) the trial court erred in denying the severance of the charges pertaining to the two shooting events; 2) the court erred in admitting evidence found in defendant's jail cell; 3) the court impermissibly admitted certain hearsay evidence; 4) the court erred in denying the suppression motion; 5) the prosecutor's misconduct required reversal; and 6) the sentence was excessive.

We affirmed defendant's convictions but remanded for entry of a corrected judgment of conviction to reflect the correct period of parole ineligibility under the murder conviction.[1]

After defendant filed a pro se PCR petition, he was assigned counsel who filed a brief in support of defendant's petition. After reviewing the papers, the

---

[1] The corrected judgment of conviction reflected an aggregate 63.75 years of parole ineligibility.

PCR judge granted an evidentiary hearing to determine whether trial counsel was ineffective in 1) failing to call Davion Sumler as a witness as requested by defendant; and 2) in failing to discuss with defendant his right to testify.

Defendant, Sumler, and defendant's trial counsel testified at the hearing. Defendant stated that he told trial counsel he wanted to testify on his own behalf, but counsel responded it was not part of his strategy. Defendant said trial counsel did not discuss with him what testimony could be elicited from him if he testified nor did counsel inform him as to the potential consequences of him testifying. He conceded his credibility would have been tested like other witnesses he had observed in court.

Although defendant recalled he was questioned by the court regarding his decision not to testify, he could not remember any specific questions. He admitted he made the decision not to testify of his own free will.

When questioned about Sumler, defendant stated he was his cousin, he lived on the corner of the street where the crimes occurred, and he was an eyewitness. Defendant said he told trial counsel to call Sumler as a witness. Defendant also stated he was present when he heard trial counsel speak on his cell phone to Sumler.

Sumler, a convicted felon, testified that he gave a statement to defendant's investigator in December 2016. He recalled that on March 22, 2006, he was standing on the corner of South 19th Street and South Orange Avenue when he saw two individuals walk by him. He did not know the people. However, after the people turned the corner, Sumler heard gunshots and both individuals ran back past him. Neither of the individuals was defendant.

On March 23, 2006, Sumler recalled being two doors away from the shooting. As he was working outside on his car, he saw a woman and her two sons walk past him and go to a store. When they again passed him, he heard a loud boom. As he looked up, he saw a man with a red bandana wrapped around his face shooting at the woman and children. Although he saw the person, he did not recognize him as defendant. Sumler described the shooter as a "skinny guy" with "long dreads" and a "small build." He was also certain the gun was a long nose revolver. Sumler said he ran away from the scene but came back once the police arrived.

Sumler stated he did not go to the police or inform them about the March 22 incident. He did talk to the police on March 23, telling them what he saw.

Trial counsel has worked in the public defender's office for twenty-eight years, trying more than fifty homicide cases. Counsel recalled representing

A-0287-18T2

defendant and discussing trial strategy with him, including defendant's right to testify. Counsel stated he has never stopped a client from testifying if he or she insisted on doing so. He also recalled discussing with defendant the impact the evidence found in his cell would have and how a prior conviction could be used against him in the event he testified.

Counsel did not recall any conversation about an alibi witness and said defendant never gave him information about an alibi or eyewitness. He stated he would have investigated it if he was so informed. Counsel did not remember ever speaking to Sumler.

The PCR court issued a comprehensive well-reasoned written decision on May 3, 2018 denying the PCR petition. The court found petitioner incredible, as his testimony was "inherently unreasonable as compared to [defense counsel's] testimony, and his testimony was contradicted by his prior inconsistent statements [made] during his colloquy with the [c]ourt." The court described Sumler's testimony as biased and he treated it "with skepticism." In contrast, the PCR court found trial counsel to be credible.

The PCR court rejected defendant's assertion that his counsel was deficient in failing to call Sumler as an exculpatory witness. The court noted that "Sumler's purported testimony would not have been credible in light of the

statements of other witnesses, the statements of [defendant] himself, the physical evidence near the time of the shootings, the identifications of witnesses and the other proofs in the case."

The PCR court noted that trial counsel did not recall defendant proffering Sumler as an alibi or eyewitness. Moreover, Sumler stated he did not speak to trial counsel either prior to or during the trial in reference to his knowledge of the March 2006 shootings. Therefore, the PCR court stated there was no support for defendant's assertion that trial counsel was deficient in not calling Sumler as a witness.

Even if trial counsel was deficient, the PCR court found defendant had not demonstrated any prejudice. Sumler did not see the first shooting, and he could not describe the individuals who ran by him or even the clothing they wore. Although Sumler described the shooter he saw on March 23, his description of the murder weapon did not match the weapon that was proven to have been used. Sumler was certain it was a revolver; the proofs showed it was a semi-automatic handgun defendant admitted belonged to him, found in the apartment where defendant was arrested. In addition, several eyewitnesses identified defendant

as the shooter.  Therefore, the PCR court concluded defendant had not established the second Strickland prong.[2]

The PCR court also rejected defendant's argument that trial counsel was ineffective in not permitting defendant to testify.  The court found defendant had not demonstrated that trial counsel's performance was deficient.  The court said, "[t]he credible evidence, including [trial counsel's] testimony at the evidentiary hearing and [defendant's] statements at trial, shows that [defendant] decided of his own free will not to testify and that [trial counsel] did not pressure him into this decision."  The court further noted that whatever advice trial counsel gave to defendant, it was ultimately defendant's choice whether to testify or not. There was no evidence that defendant was under any coercion not to testify.

On appeal, defendant presents the following issues:

> POINT I - THE DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE DAVION SUMLER AS AN EXCULPATORY WITNESS AND/OR HAVE HIM TESTIFY.
>
> POINT II - THE DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE TRIAL COUNSEL ABRIDGED HIS CONSTITUTIONAL RIGHT TO TESTIFY.

---

[2] See Strickland v. Washington, 466 U.S. 668 (1984).

The standard for determining whether trial counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland, 466 U.S. at 687 and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).  In order to prevail on a claim of ineffective assistance of counsel, defendant must meet the two-pronged test establishing both that: 1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and 2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 687, 694.

In our review of a PCR court's determination, we defer to the court's factual findings, including credibility determinations, if they are supported by "adequate, substantial and credible evidence."  State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

We affirm substantially for the reasons given in the PCR court's cogent decision.  We add only the following brief comments.

During the evidentiary hearing, defendant testified he did not know Sumler was a witness, did not know his phone number and could not describe

what Sumler might have witnessed. But he also stated that, although he did not ask trial counsel to call Sumler as a witness, nevertheless during a jail visit, he heard counsel call Sumler on his cellphone.

Trial counsel did not recall defendant ever proffering Sumler as an alibi or eyewitness. He stated that if an exculpatory witness had been presented, he would have investigated the information and discussed it with defendant. We are satisfied defendant has not established counsel was deficient in not calling Sumler as a witness.

Moreover, defendant has not shown any prejudice from Sumler's non-appearance as a witness. Sumler did not observe the March 22 shooting and could not identify the individuals that ran by him. Although he saw the shooter on March 23, his description was sparse. He also described a weapon that was later proven not to be the murder weapon. The lack of Sumler's testimony did not deprive defendant of a fair trial.

We discern no merit to defendant's argument that trial counsel prevented him from testifying. The trial judge carefully interviewed defendant regarding his choice not to testify. Defendant stated he had discussed the issue with counsel and had chosen, without coercion, not to testify. Furthermore, defendant confirmed counsel advised him of the perils of testifying, including

questioning as to the incriminating evidence found in his jail cell, his admission of ownership of the gun and evidence of a prior conviction.

We are satisfied the PCR court's denial of the petition was supported by the credible evidence in the record. Defendant did not demonstrate trial counsel was ineffective under the Strickland-Fritz test.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-0287-18T2